IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JASON D. VASIL**, on his own behalf and on behalf of all those similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:14cv690 |
| | ) | **Electronic Filing** |
| **DUNHAM'S ATHLEISURE CORPORATION** d/b/a DUNHAM'S SPORTS, | ) ) ) ) | |
| Defendant. | ) ) | |

## OPINION

Jason D. Vasil ("plaintiff") commenced this action on behalf of himself and all others similarly situated seeking redress against his former employer, Dunham's Athleisure Corporation ("defendant"), for the alleged failure to pay overtime wages under state and federal law. Plaintiff's complaint advances causes of action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. (the "FLSA"), the Pennsylvania Minimum Wage Act of 1968, 43. Pa. Cons. Stat. § 333.101 *et seq*. (the "PMWA"), and the Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1 *et seq*. (the "WPCL").[1]  Presently before the court is plaintiff's motion for conditional certification under the FLSA. For the reasons set forth below, the motion will be granted.

The complaint sets forth the background below. Defendant is in the retail business of selling sportswear and sports equipment. Complaint at ¶ 5. It operates more than 200 store locations across the country. Id.  Plaintiff worked for defendant as an assistant store manager

---

[1] Plaintiff's WPCL claim was dismissed pursuant to an opinion and order issued on March 23, 2015, resolving defendant's partial motion to dismiss.

("ASM") from July 16, 2012 until April 25, 2014 at its Hermitage, Pennsylvania store. Id. at ¶¶ 4, 17. This position was made available to plaintiff as an executive management position that was salary-based and exempt from overtime wage law. Id. at ¶ 18. Although classified as an exempt position, plaintiff actually performed primarily manual labor and non-managerial duties. Id. at ¶¶ 20-21. He regularly was required to work in excess of forty hours per week. Id. at ¶ 19.

Plaintiff performed managerial duties less than twenty percent of the time. Id. at ¶ 22. Instead, he worked at registers, assisted customers, stocked merchandise, and performed janitorial duties and other non-managerial tasks. Id. at ¶ 20. This non-managerial work was substantially similar to that performed by non-exempt hourly employees, and he performed these tasks alongside these employees. Id. at ¶ 25. Any managerial duties he did perform were limited to scheduling employee work hours, handling customer complaints and approving returns. Id. at ¶ 22.

Plaintiff was not authorized to interview or hire job applicants, terminate employees, review employee performance, or make decisions about changes in employees' rates of pay. Id. at ¶¶ 22-23. He likewise could not order merchandise, set store hours, or make other decisions regarding the operation of the store. Id. at ¶ 24.

Defendant frequently used ASMs to perform "intense manual labor" in opening new stores. Id. at ¶ 21. The ASMs would drive between six and twenty hours to reach these locations and would stay at hotels until the physical labor was finished. Id. During these events, they worked twelve hours per day while under the supervision of the local store manager. Id. This work included stocking shelves, organizing store displays, and arranging fixtures and equipment over the course of four or five days. Id. These non-managerial responsibilities

constituted the vast majority of the time worked at these events. Id. at ¶ 20. Plaintiff was paid as a salaried employee throughout his employment with defendant. Id. at ¶ 18.

Plaintiff asserts that defendant misclassified him as an exempt manager or executive in violation of the FLSA, PMWA and WPCL. Id. at ¶¶ 6, 12, 18. He alleges this was part of defendant's pattern and practice of misclassifying all ASMs to exempt them from being paid overtime compensation as required by law. Id. at ¶¶ 6, 12, 26.

Plaintiff generally maintains that notwithstanding defendant's job description and exempt classification of ASMs, defendant had a uniform practice of requiring these employees to work in excess of forty hours per week without a sufficient allocation of actual managerial tasks and responsibilities. Under this practice the ASMs spent over eighty percent of their time performing non-managerial tasks such as assisting customers, ringing up sales, stocking merchandise, unloading trucks, performing janitorial and maintenance work and so forth.

Plaintiff moves for conditional certification of a collective action and to facilitate court-approved notice of this lawsuit to all current and former ASMs who have held the position at any time in the past three years. He argues that (1) his declaration, (2) the declarations of two other former ASMs who already have opted in, Nathan Simerman and Chad Kirkpatrick, and (3) defendant's answer provide adequate grounds to meet the necessary showing at this juncture and moving forward with conditional certification is consistent with and will serve the remedial and efficacious purposes underlying this statutorily authorized procedure.

Defendant contends that conditional certification would be inappropriate for two essential reasons. First, the only "policy" plaintiff has identified is the universal job description for ASMs which does not identify anything that is illegal or improper under the FLSA. And plaintiff otherwise "has not" and "cannot" come forward with "evidence" that other ASMs were subjected

3

to a substantially similar working environment. Indeed, from defendant's perspective any attempt to certify a collective is doomed to failure because defendant has obtained declarations from 150 of its 215 ASMs and these submissions collectively show that the work responsibilities of the ASMs vary greatly by location. Such variation in turn serves to assure that any attempt to ascertain whether such individuals are within the boundaries of a collective will require an individualized inquiry, thus defeating the very purpose for proceeding in such a manner.

Plaintiff has met the showing needed for conditional certification. Defendant's position seeks to put the cart before the horse and improperly bars plaintiff from the process and opportunity to be heard that has to occur before the court can make assessments about the matters defendant advances in opposition to the motion.

It is well-settled that two different standards apply for certification under the FLSA— "one for conditional certification, and another for final certification." Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 534 (3d Cir. 2012). A "fairly lenient standard" applies for conditional certification, while a "stricter standard" applies on final certification. Id. at 534-35.

In the realm of conditional certification, courts have adopted the "modest factual showing" standard, under which "a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 193 (3d Cir. 2011). In other words, a plaintiff must make a "basic or modest factual showing that the proposed recipients of opt-in notices are similarly situated to the named Plaintiff." Wright v. Lehigh Valley Hosp., Civ. A. No. 10-431, 2010 WL 3363992, at *3 (E.D. Pa. Aug. 24, 2010).

The record demonstrates that all potential members of the proposed collective share certain undisputed common attributes. First, they all are or were employed as ASMs. Second, they all performed their duties pursuant to a common job description which defendant utilized to classify them as exempt. Third, they often worked in excess of forty hours in a week. Fourth, they assisted with the opening of new stores within and outside of the corporate district where they were employed. Fifth, as exempt employees they did not receive overtime pay at any time. These undisputed characteristics demonstrate that there is a discrete and readily identifiable group of employees who worked under similar circumstances.

Moreover, the affidavits from plaintiffs Vasil and Simerman do supply some evidence to support a showing that the duties of the ASMs were implemented in violation of the FLSA. During a great deal of the time these opt-in plaintiffs' work experience consisted of non-exempt tasks. They spent their time assisting customers, ringing up sales, stocking merchandise, unloading trucks, performing janitorial and store maintenance work, and remodeling. They likewise were required to embark on excursions of immense physical labor when they were sent to assist with new store openings. In contrast, they were not given authority to (1) make employment decisions about other employees, (2) make decisions about ordering, displaying or pricing merchandise, or (3) make decisions about the hours of operation and/or matters affecting the profitability and efficiency of store operations. These common experiences supply the factual nexus needed to permit conditional certification.

Defendant's supposition that an identical policy or practice made unlawful under the FLSA must be common to each of its past or present ASMs in order to warrant conditional certification is insidious. The showing required is that a factual nexus exists between the manner in which the alleged policy affected the plaintiff and the manner in which it affected other

5

employees such that they ultimately may be found to be similarly situated. Plaintiff has satisfied that showing and further assessments and determinations are beyond the scope of the current inquiry. Cf. Symczyk, 656 F.3d at 193 ("After discovery, and with the benefit of 'a much thicker record than it had at the notice stage,' a court following [the two stage] approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff.") (quoting Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1261 (11th Cir. 2008)).

Defendant's contention that the very definition of the class to be encompassed within the conditional certification must be limited to a policy or practice that facially violates the FLSA likewise is misplaced. The first step is one committed to the exercise of the court's discretion and it is enough that there exists an identifiable class of employees within which some of the employees were subjected to an alleged unlawful policy or practice in a manner that will permit a finding that the employees were similarly situated. Cf. Hoffmann-La roche, Inc., v. Sperling, 493 U.S. 165, 170 (1989) ("Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."). As the United States Court of Appeals for the Second Circuit has observed:

> Although they are not required to do so by FLSA, district courts "have discretion, in appropriate cases, to implement [§ 216(b) ] . . . by facilitating notice to potential plaintiffs" of the pendency of the action and of their opportunity to opt-in as represented plaintiffs. Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169 [] (1989). In determining whether to exercise this discretion in an "appropriate case[ ]," the district courts of this Circuit appear to have coalesced around a two-step method, a method which, while again not required by the terms of FLSA or the Supreme Court's cases, we think is sensible. The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred. See, e.g., Morgan v. Family Dollar

Stores, Inc., 551 F.3d 1233, 1258–62 (11th Cir. 2008); Damassia v. Duane Reade, Inc., No. 04 Civ. 8819, 2006 WL 2853971, at *3 (S.D. N.Y. Oct. 5, 2006) (Lynch, J.); Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D. N.Y.1997) (Sotomayor, J.). The court may send this notice after plaintiffs make a "modest factual showing" that they and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." Sbarro, 982 F. Supp. at 261. In a FLSA exemption case, plaintiffs accomplish this by making some showing that "there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions," on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme. Family Dollar, 551 F.3d at 1259. The "modest factual showing" cannot be satisfied simply by "unsupported assertions," Dybach v. State of Fla. Dep't of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991), but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether "similarly situated" plaintiffs do in fact exist, see Sbarro, 982 F. Supp. at 261.

Myers v. Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010) (cited with approval in Zavala v. Wal Mart Stores, Inc., 691 F.3d 527, 536 n.4 (3d Cir. 2012).

Here, plaintiffs Vasil and Simerman's affidavits supply some evidence that a number of employees working under a facial classification of exempt employees within defendant's workforce might have been required to work under circumstances that violated the FLSA and in a manner that will support a finding that the employees were similarly situated. Interjecting defendant's required showing would essentially place beyond reach the use of the conditional certification process where the alleged FLSA violation was not facially apparent in the employer's own employment-related classifications. Such an approach is inconsistent with the remedial purposes of the FLSA and is not warranted under the present circumstances in any event.

Against this backdrop it is clear that defendant's invocation of the "post Dukes" mantra of "all individualized determinations" is at best premature and must be rejected as such.[2] Defendant presents declarations from 150 ASMs to show that there is no uniformity among the job duties performed by its ASMs and thus any attempt to find ASMs who have been

---

[2] Wal-Mart Stores, Inc., v. Dukes, -- U.S. --, 131 S. Ct. 2541 (2011).

7

subjected to the working paradigm advanced by plaintiff Vasil is an exercise in futility.[3] But as Judge Hornak opined in Stallard v. Fifth Third Bank, 2013 U.S. Dist. LEXIS 186531 (W.D. Pa. December 12, 2013): "[d]efendant may turn out to be correct on the merits, but unless it is patently clear that Plaintiffs cannot prevail as a matter of law, . . . or that the commonality of generally applicable employment and compensation policies *necessarily* pales in comparison to individualized determinations of liability, . . . an examination of the merits of the claims and defenses does not occur at this stage of the proceedings." Id. at *9. In other words, while it may be true that defendant will be able to show that "there is not pure identity as to what each [ASM's] day-in, day-out duties were, at each location, in every one of the [defendant's stores], that is not the test." Stallard, 2013 U.S. Dist. LEXIS 186531 at *6-7.

Here, there is a discrete and readily identifiable group of employees who worked under similar circumstances and a showing has been made that at least some of the employees within that group were subjected to a working environment that violated the FLSA in a manner that will support a finding that the employees were similarly situated. Plaintiff's support for his contentions of unlawful commonality in implementation rises well above "speculation." Accordingly, the exercise of discretion in favor of conditional certification is warranted.

Defendant, citing to Harriel v. Wal-Mart Stores, 2012 U.S. Dist. LEXIS 97527 (D.N.J. July 13, 2012), contends that mere deviation from a lawful job description cannot be the foundation for conditional certification. While this argument ultimately might carry the day pursuant to the analysis conducted at the second stage, Harriel does not provide a persuasive

---

[3] Curiously, defendant has refused to permit plaintiff's counsel to have contact or interaction with these ASMs or otherwise be involved in the process leading to the generation of these declarations.

basis to foreclose the relief plaintiff Vasil currently seeks. The plaintiff in Harriel failed to meet the burden at stage one because he "did not provide the existence of even one other person" who would choose to opt in to the collective action. Id. at *15. As a result, he failed to prove that he had anything in common with the other employees that held the same position. The case at hand already differs in that material aspect: at this point at least five opt-in plaintiffs seemingly are advancing similar allegations.

Consideration of the weight of reasoned authority supports the proposition that plaintiffs are merely required to make a "modest factual showing" that the proposed recipients of opt-in notices are similarly situated. Symczyk, 656 F.3d at 192. Plaintiff Vasil has satisfied this burden by providing testimony regarding his weekly work hours and duties, as well as similar testimony from opt-in plaintiffs Nathan Simerman and Chad Kirkpatrick. This evidence goes beyond conjecture and supports a factual showing of similarity between the manner defendant's exempt classification of ASMs affected plaintiff and the manner in which it affected or affects other ASMs. Accordingly, plaintiff's motion will be granted.[4]

Date: December 4, 2015

                 s/David Stewart Cercone
                 David Stewart Cercone
                 United States District Judge

cc:  James G. Cirilano, Esquire
   Michael J. Bruzzese, Esquire
   Christian Ankowiak, Esquire
   Peter J. Ennis, Esquire
   James F. Hermon, Esquire
   Paul A. Wilhelm, Esquire
   Robert A. Boonin, Esquire

   (*Via CM/ECF Electronic Mail*)

---

[4] In accordance with the discussions with counsel at the October 17, 2014, and November 20, 2015, status conferences, a conference will be scheduled with counsel to discuss the issues relating to the form, timing and manner of the proposed notice to the members of the collective.