# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON D. VASIL, on behalf of himself and all others similarly situated, | CIVIL DIVISION |
| Plaintiff, | Case No.: 2:14-cv-00690-DSC |
| v. | |
| DUNHAM'S ATHLEISURE CORPORATION d/b/a DUNHAM'S SPORTS, | Honorable David Stewart Cercone |
| Defendant. | |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, SERVICE AWARDS, ATTORNEYS' FEES AND COSTS, AND DISMISSAL OF LAWSUIT

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...........................................................2

I.    Factual Allegations ....................................................................................................2

II.   Overview of Investigation, Litigation and Settlement Negotiations ...................................2

SETTLEMENT TERMS ........................................................................................................3

ARGUMENT ..........................................................................................................................4

I.    A One-Step Approval Process Is Standard for FLSA Settlements....................................4

II.   The Court Should Approve the Parties' Negotiated Settlement Agreement ......................5

      A.   The Settlement Agreement Is a Compromise of a Bona Fide Dispute ...............6

      B.   The Settlement Is Fair, Reasonable and Adequate ...........................................6

      C.   The Settlement Does Not Frustrate the Goals of the FLSA...............................9

III.  The Service Awards Should Be Approved as Fair and Reasonable...............................10

IV.  The Court Should Approve the Proposed Settlement Notice and Claim Form................12

V.   Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable ......................13

      A.   Plaintiffs' Request for Attorneys' Fees Is Reasonable ...................................13

      B.   Plaintiffs' Counsel Is Entitled to Recover Their Reasonable Costs.................15

CONCLUSION ......................................................................................................................15

# TABLE OF AUTHORITIES

CASES                                                                                                    PAGE(S)

*Bettger v. Crossmark, Inc.*,
    No. 13 Civ. 2030, 2015 WL 279754 (M.D. Pa. Jan. 22, 2015)..................................................5

*Acevedo v. Brightview Landscapes, LLC*,
    No. 13 Civ. 2529, 2017 WL 4354809 (M.D. Pa. Oct. 2, 2017) ...............................................8

*Aquilino v. Home Depot, U.S.A., Inc.*,
    No. 04 Civ. 4100, 2011 WL 564039 (D.N.J. Feb. 15, 2011) ....................................................8

*Blum v. Stenson*,
    465 U.S. 886 (1984) .................................................................................................................14

*Brown v. TrueBlue, Inc.*,
    No. 10 Civ. 00514, 2013 WL 5408575 (M.D. Pa. Sept. 25, 2013) .........................................4

*Castagna v. Madison Square Garden, L.P.*,
    No. 09 Civ. 10211, 2011 WL 2208614 (E.D.N.Y. June 12, 2013) .........................................9

*In re Chickie's & Pete's Wage & Hour Litig.*,
    No. 12 Civ. 6820, 2014 WL 911718 (E.D. Pa. Mar. 7, 2014)...........................................5, 14

*Creed v. Benco Dental Supply Co.*,
    No. 12 Civ. 01571, 2013 WL 5276109 (M.D. Pa. Sept. 17, 2013) .......................................12

*Diclemente v. Adams Outdoor Advert., Inc.*,
    No. 15 Civ. 596, 2016 WL 3654462 (M.D. Pa. July 8, 2016) ...............................................10

*Dino v. Pennsylvania*,
    No. 08 Civ. 1493, 2013 WL 4041681 (M.D. Pa. Aug. 8, 2013) .............................................7

*Espenscheid v. DirectSat USA, LLC*,
    688 F.3d 872 (7th Cir. 2012) .................................................................................................11

*Fein v. Ditech Fin.*,
    LLC, No. 16 Civ. 660, 2017 WL 4284116 (E.D. Pa. Sept. 27, 2017)....................................10

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ...........................................................................................6, 8, 9

*Hall v. Best Buy Co.*,
    274 F.R.D. 154 (E.D. Pa. 2011) ............................................................................................11

*Halle v. W. Penn Allegheny Health Sys. Inc.*,
    842 F.3d 215 (3d Cir. 2016) .....................................................................................................5

*Hernandez v. Earth Care, Inc.*,
No. 15 Civ. 5091, 2016 WL 3981348 (E.D. Pa. July 25, 2016)..................................................9

*Hernandez v. Merrill Lynch & Co., Inc.*,
No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ...........................................12

*Itterly v. Family Dollar Stores, Inc.*,
606 F. App'x 643 (3d Cir. 2015) ...............................................................................................8

*Keller v. TD Bank, N.A.*,
No. 12 Civ. 5054, 2014 WL 5591033 (E.D. Pa. Nov. 4, 2014) ........................................12, 15

*Loughner v. Univ. of Pittsburgh*,
260 F.3d 173 (3d Cir. 2001) ...............................................................................................13, 14

*Lovett v. Connect America.com*,
No. 14 Civ. 2596, 2015 WL 5334261 (E.D. Pa. Sept. 14, 2015) ...........................................11

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) .............................................................................................4, 5

*In re Milos Litig.*,
No. 08 Civ. 6666, 2010 WL 199688 (S.D.N.Y. Jan. 11, 2010) ..............................................12

*O'Connor v. Oakhurst Dairy*,
No. 14 Civ. 192, 2015 WL 2452678 (D. Me. May 22, 2015) ...................................................4

*Owens v. Interstate Safety Serv., Inc.*,
No. 17 Civ. 0017, 2017 WL 5593295 (M.D. Pa. Nov. 21, 2017) .............................................6

*Perry v. FleetBoston Fin. Corp.*,
229 F.R.D. 105 (E.D. Pa. 2005) ..............................................................................................12

*Prena v. BMO Fin. Corp.*,
No. 15 Civ. 9175, 2015 WL 2344949 (N.D. Ill. May 15, 2015)...............................................4

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001)............................................................................................15

*Singleton v. Domino's Pizza, LLC*,
976 F. Supp. 2d 665 (D. Md. 2013)..........................................................................................11

*Spellman v. Am. Eagle Exp., Inc.*,
No. 10 Civ. 1764, 2011 WL 4102301 (E.D. Pa. May 18, 2011)...............................................5

*Sullivan v. DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011) ....................................................................................................10

**STATUTES**

FLSA section 216(b) ....................................................................................................*passim*

Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq*. ...................................2

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ...............................................................................................................4, 5, 6

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 ................................................................12

## INTRODUCTION

Plaintiff, Jason D. Vasil ("Named Plaintiff"), and Defendant, Dunham's Athleisure Corporation d/b/a/ Dunham's Sports ("Defendant"), have agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective-wide basis for significant monetary relief. The settlement, which followed a thorough investigation, motion practice, and formal and informal discovery, satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a bona-fide dispute, was reached after contested litigation, was the result of arm's-length settlement negotiations assisted by a private mediator between experienced counsel, and provides good value to the workers whom it will benefit.

Plaintiff respectfully requests that the Court issue an order: (1) approving the settlement set forth in the Joint Stipulation of Settlement and Release ("Settlement Agreement"), to be provided to the Court for in camera review ; (2) approving the proposed Official Court Notice of Settlement and Opportunity to Make Claim ("Settlement Notice and Claim Form") (attached as Exhibits B and C to the Settlement Agreement) and directing its distribution; (3) approving Service Awards to the Named Plaintiff and each of the two Opt-In Plaintiffs who were deposed in connection with this action; (4) approving Plaintiff's request for attorneys' fees plus reimbursement of costs and expenses of $15,000.00as detailed in the attached Declaration of Justin M. Swartz ("Swartz Decl.")[1];  (5) incorporating the terms of the Settlement Agreement; and dismissing the lawsuit.[2]

---

[1]      Unless otherwise indicated, all exhibits are attached to the Swartz Declaration, and all capitalized terms have the definitions set forth in the Settlement Agreement.

[2]      A Proposed Order is attached as Exhibit A to the Settlement Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.        Factual Allegations

Plaintiff is a former employee of Defendant who worked as an Assistant Store Manager ("ASM") at Defendant's store in Hermitage, Pennsylvania, from approximately July 2012 to April 2014.  Swartz Decl. ¶ 13.  Plaintiff alleges that Defendant violated the FLSA by improperly classifying him and other ASMs as exempt from federal overtime requirements and failing to pay them overtime wages.  Defendant denies that it committed any wrongdoing or violated any federal, state or local laws pertaining to payment of wages or hours worked and vigorously disputed the claims asserted in the litigation.

### II.       Overview of Investigation, Litigation and Settlement Negotiations

Before initiating this action, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses and conducted in-depth interviews of multiple ASMs.  *Id.* ¶ 15.  Plaintiffs' Counsel focused their investigation and legal research on the underlying merits of the potential collective action members' claims, the damages to which they were entitled, and the propriety of collective action certification.  *Id.* ¶ 16.

On May 28, 2014, the Named Plaintiff filed a collective and class action complaint in the Western District of Pennsylvania, on behalf of ASMs nationwide, alleging violation of the FLSA and Pennsylvania wage and hour laws.  *See* ECF No. 1.  On July 24, 2014, Dunham Sports filed its answer along with a motion to dismiss Plaintiff's Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1 *et seq*. claims.  ECF No. 15-17.  On December 5, 2014, Plaintiff filed a motion for expedited court-authorized notice pursuant to section 216(b) of the FLSA ("Notice Motion").  *See* ECF Nos. 29-31.

On March 23, 2015, the Court issued an Opinion and Order granting Defendant's Partial Motion to Dismiss and dismissing the WPCL claims.  ECF Nos. 40-41.  The Court subsequently

2

issued an Opinion and Order on December 4, 2015 granting Plaintiff's Notice Motion and conditionally certifying the case as a collective action.  ECF Nos. 55-56.  As of this filing, sixty-nine collective members have joined this lawsuit.  Swartz Decl. ¶ 22.

The Named Plaintiff served his initial interrogatories and requests for production of documents on April 16, 2015, to which Defendants responded on May 27, 2015.  Swartz Decl. ¶ 23.  The Parties subsequently agreed to engage a private mediator to explore the possibility of settlement.  Swartz Decl. ¶ 24.  On June 22, 2016, the Parties filed a joint motion to stay the litigation pending mediation, which the Court granted on July 18, 2016.  ECF No. 154.

In advance of mediation, Defendant produced data to allow the Parties to calculate damages, including data showing the number of potential collective members in the job title, salaries and weeks worked.  *Id.* ¶ 26.  Plaintiffs' Counsel analyzed this data and constructed a damages model.  *Id.*  The Parties then drafted mediation briefs setting forth their respective positions as to liability and damages.  *Id.* ¶ 27.

On August 31, 2016, the Parties attended private mediation in Chicago, Illinois, with Michael J. Leech, a nationally well-regarded mediator who is experienced in employment law class and collective actions.  *Id.* ¶ 28.  The Parties participated in a second mediation session with Mr. Leech on March 15, 2017.  *Id.* ¶ 29.  During the ensuing months, the Parties reached an agreement on the terms of the settlement, which were memorialized in a formal Settlement Agreement executed by the Parties on or about April 3, 2018.  *Id.* ¶ 30.

## SETTLEMENT TERMS

The Settlement Agreement establishes a Gross Settlement Amount from which Eligible Settlement Collective Members can claim Settlement Awards.  Settlement Agreement ¶ 3.1.  The Gross Settlement Amount covers Eligible Settlement Collective Member awards, and any Court-

approved Service Awards to the Named Plaintiff and the two Opt-In Plaintiffs who were deposed. *Id.*

The Settlement Agreement also specifies, among other terms, the Notice procedure and claims process, *id.* ¶¶ 2.6-2.8; the time period and job title covered by the Settlement, *id.* ¶¶ 1.13-1.14; the method for allocation and distribution of funds, *id.* ¶¶ 3.4, 3.5, the release terms, *id.* ¶ 4; the amounts of the requested Service Awards, *id.* ¶ 3.3; the Settlement Administrator selection and duties to be performed, *id.* ¶¶ 1.33, 2.2; and the amounts of attorneys' fees and costs, *id.* ¶ 3.2.

## ARGUMENT

## I.  A One-Step Approval Process Is Standard for FLSA Settlements.

Throughout the country, a one-step approval process is appropriate in FLSA settlements that do not include classes under Federal Rule of Civil Procedure 23 ("Rule 23").[3] *Brown v. TrueBlue, Inc.*, No. 10 Civ. 00514, 2013 WL 5408575, at *1 (M.D. Pa. Sept. 25, 2013) ("Once employees present a proposed settlement agreement to the district court pursuant to Section 216(b), the Court may enter a stipulated judgment if it determines that the compromise 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'") (citation omitted). This is because collective actions under Section 216(b) of the FLSA do not implicate the same due process concerns as Rule 23 class actions. *O'Connor v. Oakhurst Dairy*, No. 14 Civ. 192, 2015 WL 2452678, at *4 (D. Me. May 22, 2015) ("The due process safeguards built into Rule 23 class actions are not necessary in the FLSA collective action context."). "In contrast to class actions brought pursuant to Federal Rule of Civil Procedure 23, the FLSA requires collective

---

[3]     *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision).").

action members to affirmatively opt in to the case." *Spellman v. Am. Eagle Exp., Inc.*, No. 10 Civ. 1764, 2011 WL 4102301, at *1 (E.D. Pa. May 18, 2011). Where, as in this matter, individuals are not part of the settlement unless they decide to participate in it, there is no need to require that the settlement provide for opt-outs or objections. *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 (3d Cir. 2016) (the "'opt-in' requirement . . . is the most conspicuous difference between the FLSA collective action device" and a Rule 23 class action).

## II.     The Court Should Approve the Parties' Negotiated Settlement Agreement.

Courts in the Circuit review FLSA settlements pursuant to the standards outlined in *Lynn's Food Stores, Inc.* v. *United States*, 679 F.2d 1350 (11th Cir. 1982). *See In re Chickie's & Pete's Wage & Hour Litig.*, No. 12 Civ. 6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014). A settlement "resolves a bona fide dispute when it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute.'" *Id.* at *2 (alterations in original) (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). "An agreement resolves a bona fide dispute when there is some doubt as to whether the plaintiff would succeed on the merits at trial." *Bettger v. Crossmark, Inc.*, No. 13 Civ. 2030, 2015 WL 279754, at *4 (M.D. Pa. Jan. 22, 2015). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

Once a court is satisfied that an agreement resolves a bona fide dispute, it engages in a two-part analysis: "first, the court assesses whether the agreement is fair and reasonable to the plaintiff employee; second, it determines whether the settlement furthers or impermissibly frustrates the implementation of the FLSA in the workplace." *Bettger*, 2015 WL 279754, at *4 (M.D. Pa. Jan. 22, 2015) (internal quotation marks and citation omitted). While the Third Circuit has not directly addressed the considerations for determining the fairness and reasonableness of

5

settlement agreements in FLSA collective actions, courts in the Circuit have applied the factors

used for approving Rule 23 class settlements.  *See, e.g., Owens v. Interstate Safety Serv., Inc.*,

No. 17 Civ. 0017, 2017 WL 5593295, at *2 (M.D. Pa. Nov. 21, 2017).  Those factors are:

> "1) the complexity, expense and likely duration of the litigation; 2) the reaction
> of the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the [collective] action through
> the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the settlement fund in light of the best possible
> recovery; [and] (9) the range of reasonableness of the settlement fund to a
> possible recovery in light of all the attendant risks of litigation."

*Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975) (ellipses and citations omitted) (the

"*Girsh* Factors").  As discussed below, because the proposed Settlement Agreement

resolves a bona fide dispute, represents a fair and reasonable resolution of that dispute in

light of the *Girsh* Factors, and does not frustrate the goals of the FLSA, it should be

approved.

### A.    The Settlement Agreement Is a Compromise of a Bona Fide Dispute.

The litigation in this case easily meets the standard of a bona fide dispute.  Throughout

the contested litigation, the Parties disputed—and continue to dispute—whether Defendant's

classification of Plaintiff and other ASMs was proper and willful, as well as how many hours of

overtime ASMs worked.  The Settlement was the result of extensive pre-suit investigation,

discovery, and substantial arms'-length negotiations.  Swartz Decl. ¶¶ 13-30.  Recognizing the

uncertain legal and factual issues involved, the Parties reached the settlement after private

mediation before an experienced mediator and through subsequent negotiations.  *Id.* ¶¶ 28-30.

### B.    The Settlement Is Fair, Reasonable and Adequate.

Application of the *Girsh* Factors also weighs in favor of finding that the Settlement is fair

and reasonable.  First, the complexity, expense, and likely duration of the litigation is evidenced

by the fact that this action has been before the Court since May 2014 and has already engendered much litigation.  The Parties have submitted briefing on several motions, including a partial motion to dismiss, Plaintiff's Notice Motion, a motion for equitable tolling of the statute of limitations, and a motion to extend the opt-in deadline and for a reminder notice, and attended several court conferences, meet and confers, and two mediation sessions.  *See supra* § II.  The Parties also exchanged initial discovery requests and data and took depositions.  *See* Swartz Decl. ¶¶ 26, 39-40.  In the absence of a settlement agreement, the heavily litigated nature of this action would likely continue, including dispositive motion practice on issues including whether ASM's were misclassified under the FLSA, and, if so, whether Defendant's misclassification of ASMs was willful.  Because litigating these issues would significantly burden the Court's limited resources, and in light of the fact that over 170 of Defendant's Assistant Store Managers signed declarations stating that they perform exempt duties in varying degrees, *see id.* ¶ 34, the complexity, expense and likely duration of the litigation weighs in favor of approval of the Settlement Agreement.

Second, while there has not been a fairness hearing in this case, the Parties have not received any affirmative opt-outs since notice of the conditional collective action certification was served on potential collective members.  *Id.* ¶ 31.

Third, the stage of proceedings and amount of discovery completed weigh in favor of approval because the Parties fully briefed several motions, and had begun depositions, exchanged initial discovery, and exchanged data in anticipation of mediation.  *See supra* § II; *Dino v. Pennsylvania,* No. 08 Civ. 1493, 2013 WL 4041681, at *4 (M.D. Pa. Aug. 8, 2013) (approving FLSA settlement where parties had "fully briefed several motions, demonstrating an appreciation of the merits and risks of proceeding to trial before negotiating the settlement

agreement."); *see Acevedo v. Brightview Landscapes, LLC*, No. 13 Civ. 2529, 2017 WL 4354809, at *10-11 (M.D. Pa. Oct. 2, 2017) (finding the third *Girsh* Factor weighed in favor of approval where parties had engaged in informal exchange of data and documents in advance of mediation).

Fourth, a trial on the merits would involve significant risks for Plaintiff as to both liability and damages. The status of ASMs under the FLSA is highly contextual with facts pointing in both directions, and some cases supporting Defendant's position. *See, e.g, Itterly v. Family Dollar Stores, Inc.*, 606 F. App'x 643, 648-49 (3d Cir. 2015) (finding that an assistant store manager was properly classified as exempt under Pennsylvania wage and hour laws despite that he "consistently performed nonexempt tasks the majority of the time"). Although Plaintiff believes this and other cases are distinguishable, and that he could ultimately establish Defendant's liability, this would require significant factual development. Accordingly, the fourth and fifth *Girsh* Factors weigh in favor of approving the Settlement Agreement.

Fifth, there was a risk that Plaintiff would not succeed in maintaining a collective through trial. Although Plaintiff and his counsel believe the weight of the evidence would show that Plaintiff and other ASMs were similarly situated and could withstand any attempts at decertification, Defendant would likely argue that the differences among various stores and other individualized questions precluded certification, or would warrant decertification of a collective. Although Plaintiff disagrees, defendants have prevailed on such arguments. *See, e.g.*, *Aquilino v. Home Depot, U.S.A., Inc.*, No. 04 Civ. 4100, 2011 WL 564039, at *9 (D.N.J. Feb. 15, 2011) (granting defendant's motion to decertify a conditional FLSA collective of merchandising assistant store managers ("MASMs") in part because of the "job responsibilities and duties

varied from MASM to MASM, from store to store, from shift to shift, and in some cases from subordinate employee to subordinate employee.").

Sixth, the Gross Settlement Amount is substantial, especially in light of the aforementioned risks that Plaintiff faces. First, by Plaintiff's estimate, this Gross Settlement Amount represents a substantial percentage of Eligible Settlement Collective Members' lost wages. Swartz Decl. ¶ 32. The Gross Settlement Amount represents a gross per-workweek amount averaging $32 for each Eligible Work Week worked by Eligible Settlement Collective Members, assuming Eligible Settlement Collective Members worked 5 hours of overtime a week on a fluctuating workweek basis (excluding liquidated damages). This fairly compromises the claims in the lawsuit for unpaid overtime. By Defendant's estimate, however, even if Plaintiff were to establish at trial that ASMs should have been classified as non-exempt, the lost wages of the collective would be much smaller.

Because the *Girsh* Factors support the reasonableness of the Settlement,[4] it should be approved.

### C. The Settlement Does Not Frustrate the Goals of the FLSA.

After reviewing the fairness and reasonableness of a settlement, the Court should "consider whether the agreement frustrates implementation of the FLSA[,]" which has an "underlying goal . . . to protect all covered workers from substandard wages and oppressive working hours." *Hernandez v. Earth Care, Inc.*, No. 15 Civ. 5091, 2016 WL 3981348, at *5 (E.D. Pa. July 25, 2016) (internal quotation omitted). Here, the Settlement does not impermissibly frustrate the purposes of the FLSA. The release of claims is not overbroad, and

---

[4]     As to the seventh *Girsh* Factor, although the Defendant may have been able to withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *7 (E.D.N.Y. June 12, 2013) (citations omitted). Accordingly, this factor does not preclude the Court from approving the Settlement.

the confidentiality provision still allows Participating Settlement Collective Members to disclose that the case has concluded and does not contain any sanctions. *Diclemente v. Adams Outdoor Advert., Inc.*, No. 15 Civ. 596, 2016 WL 3654462, at \*4 (M.D. Pa. July 8, 2016) (confidentiality provision of FLSA settlement did not frustrate the implementation of the FLSA where it did not contain any sanctions and "allow[ed] plaintiffs to disclose the fact that the case has ended as opposed to be dismissed based on failure to state cognizable claims").

III.     **The Service Awards Should Be Approved as Fair and Reasonable.**

The Named Plaintiff requests a Service Award of $6,000.00, as well as Service Awards of $4,000 each to the two Opt-In Plaintiffs who were deposed in this matter.  These Service Awards are reasonable given the significant contributions they made to advance the prosecution and resolution of the lawsuit.  Service awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs and are commonly awarded to those who serve the collective's interests.  *See, e.g.*, *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 333 n. 65 (3d Cir. 2011); *Fein v. Ditech Fin.*, LLC, No. 16 Civ. 660, 2017 WL 4284116, at \*11 (E.D. Pa. Sept. 27, 2017) ("Courts routinely pay an incentive award to class representatives or named plaintiffs in wage and hour class/collective actions to reward their service to the entire [collective].") (citing *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000).

In examining the reasonableness of a requested service award, courts consider: (1) "the financial, reputational and personal risks to the plaintiff"; (2) "the degree to which the Plaintiff was involved in discovery and other litigation responsibilities"; (3) "the length of the litigation"; and (4) "the degree to which the named plaintiff benefitted (or not) as a c[ollective] member."

*Hall v. Best Buy Co.*, 274 F.R.D. 154, 173 (E.D. Pa. 2011).  These considerations weigh in favor of the requested Service Awards.

The Named Plaintiff undertook substantial financial, reputational and personal risks.  The Named Plaintiff agreed to bring the action in his name, to be deposed, and to testify if there was a trial.  Swartz Decl. ¶ 37.  In so doing, he assumed significant risk that "should the suit fail, he [could] find himself liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees."  *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012).  In addition, although the Named Plaintiff and Opt-In Plaintiffs were no longer employed by Defendant when they initiated or joined the lawsuit, they merit recognition for risking retaliation from future employers for the benefit of all Eligible Settlement Collective Members.  *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (named plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against their prior employer).

In addition, the Named Plaintiff and Opt-In Plaintiffs took substantial actions to protect the interests of potential collective action members that resulted in a substantial benefit that took over three years of litigation to secure.  The Named Plaintiff participated in an extensive pre-suit investigation, provided documents crucial to establishing his claims and the claims of the collective, extensively reviewed the claims presented, helped Plaintiffs' Counsel prepare for the mediation, and responded to discovery requests.  Swartz Decl. ¶ 39.  Opt-In Plaintiffs also dedicated significant time to the lawsuit, including by searching for and producing documents, and preparing for and attending depositions.  *Id.* ¶ 40.  Courts in this circuit and others have approved service awards for similar activities and in actions litigated for far less time than this one.  *See, e.g.*, *Lovett v. Connect America.com*, No. 14 Civ. 2596, 2015 WL 5334261, at *4 (E.D.

Pa. Sept. 14, 2015) (approving incentive payments for plaintiffs who had located documents and witnesses, participated in settlement negotiations, and provided documents and information in anticipation of responding to written discovery); *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005) (approving $5,000 incentive awards where plaintiffs expended "significant time and resources" for a litigation that had been pending for "over a year").

Finally, Courts routinely approve service awards equal to or greater than the awards requested here. *See, e.g.*, *Creed v. Benco Dental Supply Co.*, No. 12 Civ. 01571, 2013 WL 5276109, at *7 (M.D. Pa. Sept. 17, 2013) (approving award of $15,000 to named plaintiff in FLSA collective action settlement).[5]

## IV.    The Court Should Approve the Proposed Settlement Notice and Claim Form.

The Court should also approve the proposed Settlement Notice and Claim Form. *See* Exs. B & C to the Settlement Agreement (Settlement Notice and Claim Form). The proposed Settlement Notice informs Eligible Settlement Collective Members of the terms of the Settlement, including the allocation formula, how Eligible Settlement Collective Members may participate, the Settlement Award to which they are entitled, the scope of the release, and the request for attorneys' fees and costs. *See id.*; *see also In re Milos Litig.*, No. 08 Civ. 6666, 2010 WL 199688, at *1 (S.D.N.Y. Jan. 11, 2010) (notice should "provide[] accurate and timely notice concerning the pendency of the collective action, so that [an individual receiving the notice] can make an informed decision about whether to participate"); *Keller v. TD Bank, N.A.*, No. 12 Civ. 5054, 2014 WL 5591033, at *3 (E.D. Pa. Nov. 4, 2014) (approved notice and claim informed

---

[5]     *See also Koszyk v. Country Fin. a/k/a CC Servs.*, *Inc.*, No. 16 Civ. 3571, 2016 WL 5109196 at *3 (N.D. Ill. Sept. 16, 2016) ($10,000 service awards for assistance to collective early in lawsuit); *Hernandez v. Merrill Lynch & Co.*, *Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at *10 (S.D.N.Y. Mar. 21, 2013) (approving service awards of $15,000 and $12,500 to class representatives and $4,000 to an opt-in plaintiff in wage and hour action).

participants of the settlement, release of claims, allocation formula, and instructions for submitting a claim form).

**V.**     **Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.**

Plaintiffs' Counsel is entitled to recover their fees and costs expended in litigating this FLSA collective action.  The FLSA requires courts to award "a reasonable attorney's fee . . . and costs of the action."  29 U.S.C. § 216(b).  When awarding attorneys' fees in FLSA cases, there is a strong presumption that the lodestar, which is calculated by multiplying their reasonable hourly rate by the number of hours reasonably expended on the litigation, is reasonable.  *See Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001).  Plaintiffs' Counsel requests that the Court grant the attorneys' fee request, as set forth in section 3.2 of the Settlement Agreement.

**A.**     **Plaintiffs' Request for Attorneys' Fees Is Reasonable**.

Plaintiffs' Counsel's lodestar is reasonable because it was calculated by multiplying the reasonable number of hours worked (which were contemporaneously recorded) by the actual current hourly rate of each attorney.  Swartz Decl. ¶¶ 41-42.  The Court should grant Plaintiff's request for attorneys' fees incurred in litigating and settling this matter, which is considerably *less* than Plaintiffs' Counsel's actual "lodestar."  *Id.* ¶ 43; Settlement Agreement ¶ 3.2. Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a good result.  Swartz Decl. ¶ 44.  Plaintiffs' Counsel has spent approximately 1,480 attorney, paralegal, and support staff hours prosecuting and negotiating the settlement of this case.  *Id.* ¶ 41.  Multiplying these hours by the hourly rate of each attorney, paralegal, and staff member results in a $625,836.50 lodestar amount.  *Id.* ¶ 42. That Plaintiffs' Counsel here requests less than their actual lodestar further supports the reasonableness of the requested fee award.

The requested fee is also reasonable in light of the high level of success achieved in this case. Plaintiff prevailed on his motion for expedited collective action notification pursuant to 29 U.S.C. § 216(b) and obtained a substantial settlement. By Plaintiffs' estimation, the Gross Settlement Amount represents payment for approximately 5 hours of overtime a week for Eligible Settlement Collective Members. *Id.* ¶ 32; *see supra* § II.B. Moreover, as discussed above, continued litigation would pose significant risks. While Plaintiff believes he would prevail on his claims, Defendant has asserted numerous defenses as to liability and damages. If Plaintiff continued to litigate, he would have to contend with unfavorable decisions issued by district courts in this circuit and elsewhere as to the status of ASMs as exempt and class certification.

In addition, the hourly rates used by Plaintiffs' Counsel in calculating their fees are reasonable and appropriate, are the rates they typically charge, and are consistent with prevailing rates. *See id.* ¶ 47; Declaration of Gregg I. Shavitz ("Shavitz Decl.") ¶ 14; Declaration of James G. Cirilano ("Cirilano Decl.") ¶¶ 2-4; Declaration of Michael J. Bruzzese ("Bruzzese Decl.") ¶¶ 2-4; *see also Loughner*, 260 F.3d at 180 ("The starting point in ascertaining a reasonable hourly rate is the attorney's usual billing rate . . . .") (quoting *Pub. Int. Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1177, 1185 (3d Cir. 1995) (internal quotation marks omitted); *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984) (rates must be consistent with the prevailing rates in the relevant geographic area for "lawyers of reasonably comparable skill, experience, and reputation.").

Finally, because the attorneys' fees were negotiated after the substantive terms of the Settlement Agreement, Swartz Decl. ¶ 50, there is no "conflict of interest" that could have affected the Gross Settlement Amount. *See In re Chickie's & Pete's Wage & Hour Litig.*, 2014

WL 911718, at *4 (finding no conflict of interest where "[t]he amount of attorneys' fees was not negotiated until after the substantive terms of the Proposed Agreement.").

### B.       Plaintiffs' Counsel Is Entitled to Recover Their Reasonable Costs.

In addition to the requested fee award, Plaintiff's Counsel's request for reimbursement of their reasonable out-of-pocket costs in the amount of $15,000 expended in litigating and settling this matter, including filing fees, mediation expenses, photocopies, and postage, is reasonable and should be approved.[6]  *See* Swartz Decl. ¶¶ 51-52; Shavitz Decl. ¶ 13; Cirilano Decl. ¶ 5; Bruzzese Decl. ¶ 5.  These costs shall be paid by Defendant and will not be paid from the Gross Settlement Amount.  Settlement Agreement ¶ 3.1(A).  Courts in the Third Circuit routinely approve reimbursement of such costs.  *See, e.g. Keller*, 2014 WL 5591033, at *16 (approving complaint filing and mediation costs); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (approving costs for photocopies, telephone and fax charges, postage and express mail charges, and computer- assisted legal research).

### CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court issue an order: (1) approving the settlement; (2) approving the proposed Notice of Settlement and Opportunity to Join ("Settlement Notice and Claim Form") and directing its distribution; (3) approving the requested Service Awards; (4) approving Plaintiff's requested attorneys' fees and costs; and (5) incorporating the terms of the Settlement Agreement.

Dated: April 9, 2018

                                        Respectfully submitted,

                                        /s/ Michael J. Bruzzese_____

---

[6]       Although Plaintiff's Counsel's actual costs are $15,411.42, pursuant to section 3.1(A) of the Settlement Agreement, Plaintiff has agreed to seek reimbursement of no more than $15,000.00 in costs.

2cdf

**MICHAEL J. BRUZZESE**
2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
Telephone:  (412) 281-8676
Facsimile:  (877) 433-4898

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone:  (212) 245-1000
Facsimile:  (646) 509-2060

*Attorneys for Plaintiff and Opt-In Plaintiffs*

16