UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON D. VASIL, on behalf of himself and all others similarly situated,<br><br>                                   Plaintiff,<br>   v.<br>DUNHAM'S ATHLEISURE CORPORATION d/b/a DUNHAM'S SPORTS,<br>                                  Defendant. | CIVIL DIVISION<br><br>Case No.: 2:14-cv-00690-DSC<br><br>Honorable David Stewart Cercone |

**DECLARATION OF JUSTIN M. SWARTZ IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, SERVICE AWARDS, ATTORNEYS' FEES AND COSTS, AND DISMISSAL OF LAWSUIT**

I, Justin M. Swartz, declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a partner in the firm of Outten & Golden LLP ("O&G") in New York, New York, which, together with the firms of Shavitz Law Group, P.A, Cirilano & Associates, and the offices of Michael J. Bruzzese, are Plaintiffs' Counsel herein. O&G is a 60-plus attorney firm based in New York City, with additional offices in Chicago, San Francisco, and Washington, D.C., that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation, that involve wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

2. I am one of the lawyers responsible for prosecuting Plaintiffs' claims on behalf of Plaintiffs.

3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**My Background and Experience**

4.I received a Juris Doctor degree from DePaul University School of Law in 1998 with honors.  Since then, I have exclusively represented plaintiffs in employment litigation and other employee rights matters.

5.I was admitted to the bar of the State of Illinois in 1998, and the bar of the State of New York in 2002.  I am also admitted to the bars of the Second Circuit Court of Appeals, the United States District Courts for the Western, Eastern, and Southern Districts of New York, and the Northern District of Illinois.  I am a member in good standing of each of these bars.

6.From September 1998 through February 2002, I was associated with Stowell & Friedman, Ltd. in Chicago, Illinois, where I represented plaintiffs in class and multi-plaintiff employment discrimination cases.  From March 2002 through October 2003, I worked for Goodman & Zuchlewski, LLP in New York City where I represented employees in discrimination cases and other employee rights matters.

7.Since joining O&G in December 2003, I have been engaged primarily in prosecuting wage and hour class and collective actions and class action discrimination cases.

8.I am or was co-lead counsel on many wage and hour cases that district courts have certified as class actions and/or collective actions including *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29. 2006), in which the Court granted summary judgment in favor of Plaintiffs and a class of more than 300 grocery store workers, *see* 628 F. Supp. 2d 447 (S.D.N.Y. Aug. 28, 2008).  Others include *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17 Civ. 10219, 2017 WL 6460244, at *1 (D. Mass. June 8, 2017) (approving settlement of nationwide FLSA collective action settlement); *Blum v. Merrill Lynch & Co.*, Nos. 15 Civ. 1636, 15 Civ. 2960, slip op. at 2 (S.D.N.Y. May 6, 2016) (same); *Puglisi v.*

*T.D. Bank, N.A.*, No. 13 Civ. 637, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (certifying class and approving settlement of nationwide wage and hour class and collective action); *Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712, 2014 WL 5794655, at *2-4 (S.D.N.Y. Nov. 4, 2014) (same); *Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812, 2014 WL 4635745, at *25 (E.D.N.Y. Sept. 16, 2014) (appointing O&G as class counsel); *Clem v. KeyBank*, No. 13 Civ. 789, 2014 WL 2895918, at *2-4 (S.D.N.Y. June 20, 2014) (certifying class and approving settlement of nationwide wage and hour class and collective action); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *2-4 (S.D.N.Y. Oct. 2, 2013) (certifying class action under New York Labor Law and appointing O&G as class counsel); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 472-76 (S.D.N.Y. 2013) (certifying class and approving settlement of nationwide wage and hour class and collective action).

9.     I am a member of the National Employment Lawyers Association ("NELA") and formerly served on the Executive Board of its New York Chapter ("NELA/NY").  I recently served on the Fair Labor Standards Act Protocols Committee formed by the Institute for Advancement of the American Legal System ("IAALS"), which drafted IAALS's Initial Discovery Protocols for Fair Labor Standards Act Cases.  I am a former co-chair of NELA's Fair Labor Standards Act Committee.  I served on the Civil Rights Committee of the New York City Bar Association of the Bar of the City of New York from 2005 through 2008 and the Committee on Labor and Employment Law from September 2002 until June 2005.  I was co-chair of the American Bar Association Labor and Employment Law Section Ethics and Professional Responsibility Committee from 2006 through 2009, and am a member of its Equal Employment Opportunity Committee.

10.     I speak frequently on employment law issues, including wage and hour issues and

discrimination issues.  I have recently been a faculty member for continuing legal education programs focused on employment law and ethics sponsored by the American Bar Association Section of Labor and Employment Law; the New York State Bar Association Labor and Employment Law Section; the New York City Bar Committee on Labor and Employment Law, NELA, and the Practicing Law Institute, among others.

11. In connection with my work, I regularly read the New York Law Journal, advance sheets, and other literature related to employment law and class action law developments.  I attend workshops and seminars at least four times per year sponsored by NELA, NELA/NY, the American Bar Association, and other organizations.

**O&G's Expertise**

12. O&G is nationally recognized for its expertise in litigating complex class actions, including wage and hour cases like this one.  *See, e.g.*, *Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *7 (S.D.N.Y. Dec. 29, 2014) (appointing O&G as class counsel, explaining that "[b]ased on the firm's performance before [the court] in this and other cases and its work in the foregoing and other cases, [the court has] no question that it will prosecute the interests of the class vigorously."); *Beckman*, 293 F.R.D. at 477 (noting that O&G "are experienced employment lawyers with good reputations among the employment law bar"); *Yuzary v. HSBC USA, N.A.*, No. 12 Civ. 3693, 2013 WL 1832181, at *4 (S.D.N.Y. Apr. 30, 2013) (appointing O&G as class counsel); *Capsolas*, 2012 WL 1656920, at *2 (appointing O&G as class counsel and noting O&G attorneys "have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 622 (S.D.N.Y. 2012) (O&G attorneys "have substantial experience prosecuting wage and hour and

other employment-based class and collective actions."); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010) (O&G "are experienced employment lawyers with good reputations among the employment law bar . . . [and] have prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (2008) (O&G lawyers have "an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area").

**Overview of Investigation, Litigation and Settlement Negotiations**

13.     Plaintiff is a former employee of Defendant who worked as an Assistant Store Manager ("ASM") at Defendant's store in Hermitage, Pennsylvania, from approximately July 2012 to April 2014.

14.     Plaintiff alleges that Defendant violated the FLSA by improperly classifying him and other ASMs as exempt from federal overtime requirements and failing to pay them overtime wages.

15.     Before initiating this action, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses and conducted in-depth interviews of multiple ASMs.

16.     Plaintiffs' Counsel focused their investigation and legal research on the underlying merits of the potential collective action members' claims, the damages to which they were entitled, and the propriety of collective action certification.

17. On May 28, 2014, the Named Plaintiff filed a collective and class action complaint in the Western District of Pennsylvania, on behalf of ASMs nationwide, alleging violation of the FLSA and Pennsylvania wage and hour laws. *See* ECF No. 1

18. On July 24, 2014, Dunham Sports filed its answer along with a motion to dismiss Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq*. ("WPCL") claims on July 24, 2014. ECF No. 15-17.

19. On December 5, 2014, Plaintiff filed a motion for expedited court-authorized notice pursuant to section 216(b) of the FLSA ("Notice Motion"). *See* ECF Nos. 29-31.

20. On March 23, 2015, the Court issued an Opinion and Order granting Defendant's Partial Motion to Dismiss and dismissing the WPCL claims. ECF Nos. 40-41.

21. The Court subsequently issued an Opinion and Order on December 4, 2015 granting Plaintiff's Notice Motion and conditionally certifying the case as a collective action. ECF Nos. 55-56.

22. As of this filing, sixty-nine collective members have joined this lawsuit.

23. The Named Plaintiff served his initial interrogatories and requests for production of documents on April 16, 2015, to which Defendants responded on May 27, 2015.

24. The Parties subsequently agreed to engage a private mediator to explore the possibility of settlement.

25. On June 22, 2016, the Parties filed a joint motion to stay the litigation pending mediation, which the Court granted on July 18, 2016.

26. In advance of mediation, Defendant produced data to allow the Parties to calculate damages, including data showing the number of potential collective members in the job

title, salaries and weeks worked. Plaintiffs' Counsel analyzed this data and constructed a damages model.

27. The Parties then drafted mediation briefs setting forth their respective positions as to liability and damages.

28. On August 31, 2016, the Parties attended private mediation in Chicago, Illinois, with Michael J. Leech, a nationally well-regarded mediator who is experienced in employment law class and collective actions.

29. The Parties participated in a second mediation session with Mr. Leech on March 15, 2017.

30. During the ensuing months, the Parties reached an agreement on the terms of the settlement, which were memorialized in a formal Settlement Agreement executed by the Parties on or about April 3, 2018.

**Collective Member Participation**

31. The Parties have not received any affirmative opt-outs since notice of the conditional collective action certification was served on potential collective members.

**Settlement Amount**

32. By Plaintiffs' estimate, the Gross Settlement Amount represents a substantial percentage of the collective members' lost wages. The Gross Settlement Amount represents a gross per-workweek amount averaging $32 for each Eligible Work Week worked by Eligible Settlement Collective Members, representing approximately 5 hours of overtime a week on a fluctuating workweek basis (excluding liquidated damages). This amount fairly compromises the claims in the lawsuit for unpaid overtime.

33.     In the absence of a settlement agreement, the heavily litigated nature of this action would likely continue, including dispositive motion practice on issues including whether ASM's were misclassified under the FLSA, and, if so, whether Defendant's misclassification of ASMs was willful.  Litigating these issues would significantly burden the Court's limited resources.

34.     The complexity of the issues in the case is also evidence by the fact that over 170 of Defendant's Assistant Store Managers signed declarations stating that they perform exempt duties in varying degrees.

**Service Awards**

35.     The Settlement Agreement provides that, subject to Court approval, the Named Plaintiff will receive a $6,000 Service Award and each of the two Opt-In Plaintiffs who, along with the Named Plaintiff, were deposed will receive a $4,000 Service Award.  These Service Awards are reasonable given the significant contributions they made to advance the prosecution and resolution of the lawsuit.

36.     In addition, by executing the Settlement Agreement, The Named Plaintiffs and two Opt-In Plaintiffs agree to waive any right to re-employment with Defendant, sign a general release.

37.     The Named Plaintiff undertook substantial financial, reputational and personal risks.  The Named Plaintiff agreed to bring the action in his name, to be deposed, and to testify if there was a trial.

38.     The Named Plaintiff and Opt-In Plaintiffs also took substantial actions to protect the interests of potential collective action members that resulted in a substantial benefit that took over three years of litigation to secure.

39.     The Named Plaintiff participated in an extensive pre-suit investigation, provided documents crucial to establishing his claims and the claims of the collective, extensively reviewed the claims presented, helped Plaintiffs' Counsel prepare for the mediation, and responded to discovery requests.

40.     Opt-In Plaintiffs also dedicated significant time to the lawsuit, including by searching for and producing documents, and preparing for and attending depositions.

### Attorney Time Spent on the Negotiations and Litigation

41.     As of April 3, 2018, Plaintiffs' Counsel has expended approximately 1,480 hours of attorney, paralegal, and staff member time – an aggregate lodestar of $625,836.50 – litigating and settling this matter. These hours are reasonable for a case like this and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.

42.     As of April 2, 2018, multiplying these hours by the hourly rate of each attorney, paralegal, and staff member results in a lodestar amount of $625,836.50.

43.     Plaintiffs' Counsel's request for attorneys' fees is considerably *less* than their actual lodestar.

44.     Plaintiffs' Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a good result.

45.     Plaintiffs' Counsel undertook this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of significant risk. Class and collective wage and hour cases of this type are complicated, time-consuming, and subject to risk. Any lawyer undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time,

energy and resources. Due to the contingent nature of the customary fee arrangement, lawyers make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Plaintiffs' Counsel stood to gain nothing in the event the case was unsuccessful.

46. The requested fee is not based solely on time and effort already expended; rather, it is also meant to compensate Plaintiffs' Counsel for time that will be spent administering the settlement in the future. In Plaintiffs' Counsel's experience, overseeing the settlement distribution process will require an ongoing commitment. Plaintiffs' Counsel will spend time responding to Class Members' inquiries about the settlement, preparing the final approval motion, preparing for and attending the final fairness hearing, answering questions from the claims administrator, and negotiating and possibly litigating disagreements with Defendant about administering the settlement and distributing the fund.

47. The hourly rates used by Outten & Golden in calculating their fees are reasonable and appropriate, are the rates they typically charge, and are consistent with prevailing rates. O&G ordinarily and regularly bills its clients on an hourly fee basis, based upon each attorney's standard hourly rate. Currently, the Firm's rates range from $550 to $1,200 per partner's hour, $650 to $900 per counsel's hour, $275 to $500 per associate's hour, $245 per law clerk's hour, and $240 to $260 per paralegal's hour. The firm's hourly clients regularly accept and pay O&G's hourly rates.

48. Below is a chart summarizing the specific attorneys, their hourly rates, and their total time worked on this matter:

| ATTORNEYS | | | | | |
|---|---|---|---|---|---|
| Name | Initials | Position | Hours | Rate | Total |
| Justin M. Swartz | JMS | Partner | 102.90 | $950.00 | $97,755.00 |
| Juno E. Turner | JET | Partner | 1.40 | $700.00 | $980.00 |
| Sally J. Abrahamson | SJA | Partner | 0.20 | $550.00 | $110.00 |
| Melissa L. Stewart | MLS | Partner | 0.40 | $550.00 | $220.00 |
| Nicholas H. Sikon | NHS | Associate | 0.30 | $500.00 | $150.00 |
| Deirdre A. Aaron | DAA | Associate | 60.20 | $475.00 | $28,595.00 |
| Cheryl-Lyn Bentley | CDB | Associate | 8.50 | $450.00 | $3,825.00 |
| Olivia J. Quinto | OJQ | Associate | 5.30 | $400.00 | $2,120.00 |
| Elizabeth V. Stork | EVS | Associate | 145.60 | $375.00 | $54,600.00 |
| Jalise R. Burt | JRB | Associate | 69.50 | $350.00 | $24,325.00 |
| Jared W. Goldman | JWG | Associate | 0.70 | $325.00 | $227.50 |
| Melissa Phatharanavik | MP | Attorney | 20.20 | $260.00 | $5,252.00 |
| | | TOTAL | $415.20 | | $218,159.50 |

49. Below is a chart summarizing the specific paralegals, their hourly rates, and their total time worked on this matter:

| SUPPORT STAFF | | | | |
|---|---|---|---|---|
| Name | Initials | Hours | Rate | Total |
| Candice Best | CXB | 6.60 | $260.00 | $ 1,716.00 |
| Guy J. Matthews | GJM | 3.90 | $260.00 | $ 1,014.00 |
| Simone S. Etwaru | SSE | 59.70 | $260.00 | $ 15,522.00 |
| | | $ 70.20 | | $ 18,252.00 |

50. The attorneys' fees were negotiated after the substantive terms of the Settlement Agreement.

**Costs and Expenses**

51. As of March 30, 2018, O&G has incurred $6,956.68 in costs:

| COSTS | |
|---|---|
| Description | Total |
| Computerized Research | $1,639.94 |
| Court fees | $45.00 |
| Court filing | $77.96 |

11

| | |
|---|---|
| Fedex/UPS | $103.30 |
| Meals | $165.88 |
| Photocopy/Print | $177.10 |
| Telephone Conference Calls | $83.92 |
| Travel | $4,019.26 |
| Notice Administrator | $644.32 |
| **Grand Total** | **$6,956.68** |

52.     As of March 30, 2018, Plaintiffs' Counsel's combined costs incurred in litigating and settling this matter are approximately $15,411.42.  Pursuant to Section 3.1 of the Settlement Agreement, however, Plaintiff has agreed to seek reimbursement of no more than $15,000 in costs.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: April 9, 2018
New York, New York                                 Respectfully submitted,

                                                                    _____
                                                                    Justin M. Swartz

                                                                    **OUTTEN & GOLDEN LLP**
                                                                    685 Third Avenue, 25th Floor
                                                                    New York, New York 10017
                                                                    Telephone: (212) 245-1000
                                                                    Facsimile: (646) 509-2060

## **CERTIFICATION OF SERVICE**

     I hereby certify that on April 9, 2018, a copy of the foregoing documents were filed electronically and service made by certified mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by certified mail for anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

                                              */s/ Michael J. Bruzzese*
                                              Michael J. Bruzzese